```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

**UNITED STATES OF AMERICA**               **CRIMINAL ACTION**

**VERSUS**                                 **NO. 08-140**

**MOSE JEFFERSON**                         **SECTION "B" (1)**
**RENEE GILL PRATT**

## ORDER AND REASONS

Before the Court is Defendant Renee Gill Pratt's Motion to Sever Count One. (Rec. Doc. No. 410). The Motion is opposed. (Rec. Doc. No. 429). Considering the pleadings, applicable law, oral argument of the parties, for oral reasons given at prior hearing and for reasons that follow, Defendant's Motion to Sever is **DENIED.**

On March 5, 2010, the grand jury returned a Third Superseding Indictment against Defendants Mose Jefferson and Renee Gill Pratt alleging in Count 1 a conspircy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") in violation of 18 U.S.C. § 1962(d). That indictment specifically alleged that Defendants through their various non-profit and for-profit entities and political positions engaged in a pattern of racketeering activity for the primary purpose of exercising and preserving power over and within the government of the State of Louisiana, the City of New Orleans, Orleans Parish, and elsewhere, for the financial and political benefits of Defendants.

Defendant argues that the Government cannot charge multiple

1

conspiracies in a single count of an indictment. Specifically, she asserts that the Third Superceding Indictment in Count One alleges that Renee Gill Pratt assisted in obtaining several appropriations that benefitted her significant other and his business in 1999-2002 and then charged her separately in the same count with misappropriating vehicles donated to the City of New Orleans after Hurricane Katrina to her own use.  Ms. Pratt maintains that these acts have nothing to do with one another and that to the extent that the acts show a conspiracy to violate RICO-as charged in the indictment-they are clearly part of separate conspiracies, and should have been charged separately. As relief, she asks for dismissal or separation of the allegations of various conspiracies and try said charges *in seriatim*.

Identical motions have already been denied.  In the Oct. 8, 2009 Order and Reasons the court found Count 1 did not impermissibly charge multiple conspiracies; that even if it had, the issue is a question of fact for the jury, and that the charging document satisfies all the criteria dictated by *Richerson* and *Pena-Rodriguez*. *See* Rec. Doc. No. 238.  Absent new material issues of fact, law, or argument, the instant motion does not warrant a different result.

Defendant's motion is premature because the question of multiple conspiracies versus a single conspiracy is a fact question for the jury. *See United States v. Morgan*, 117 F.3d 849, 858 (5th Cir. 1997).  If Defendant chooses to pursue the multiple conspiracy

theory as a defense, she can request a multiple conspiracy instruction to the jury such as the Fifth Circuit's pattern "*Pinkerton*" instruction.[1] *See United States v. Stowell*, 947 F.2d 1251, 1258 (5th Cir. 1991), cert. denied, 112 S.Ct. 1269 (1992).

A conviction based upon a duplicitous indictment that prejudices a defendant may be subject to reversal. *United States v. Sharpe*, 193 F.3d 852, 870 (5th Cir. 1999). An indictment may be duplicitous if it joins in a single Count two or more distinct offenses. *Id*. The government may include several acts within a single Count where those actions represent a single, continuing scheme provided: "the indictment (1) notifies the defendant adequately of the charges against him; (2) does not subject the defendant to double jeopardy; (3) does not permit prejudicial evidentiary rulings at trial; and (4)does not allow the defendants to be convicted by a non-unanimous verdict." *Id*.

To prove a conspiracy, the government must prove beyond a

---

[1]Fifth Circuit Pattern Jury Instruction 2.22 reads as follows:
**CONSPIRATOR'S LIABILITY FOR SUBSTANTIVE COUNT**

A conspirator is responsible for offenses committed by another [other] conspirator[s] if the conspirator was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of, or as a foreseeable consequence of, the conspiracy.
•
Therefore, if you have first found the defendant guilty of the conspiracy charged in Count ___ and if you find beyond a reasonable doubt that during the time the defendant was a member of that conspiracy, another [other] conspirator[s] committed the offense[s] in Count[s] ___ in furtherance of or as a foreseeable consequence of that conspiracy, then you may find the defendant guilty of Count[s] ___, even though the defendant may not have participated in any of the acts which constitute the offense[s] described in Count[s] ___.

3

reasonable doubt "that (1) a common agreement or conspiracy existed; (2) the accused knew of the conspiracy; and (3) the accused, with knowledge, voluntarily joined the conspiracy." *United States v. Richerson*, 833 F.2d 1147, 1152 (5th Cir. 1987). The principal considerations in counting the number of conspiracies are (1) the existence of a common goal, (2) the nature of the scheme, and (3)the overlapping of participants in the various dealings. *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1126 (5th Cir. 1997). When examining the number of conspiracies, the Fifth Circuit has also reviewed the scope of the conspiracy, which is judged by the following five factors: (1) time, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place. *Id*. at n.4; and *United States v. Mitchell,* 777 F.2d 248, 260 (5th Cir. 1986)(finding that the "similarity of time, persons, offenses, places and overt acts among the shipments [of narcotics]" pointed to a single RICO conspiracy).

Where the evidence demonstrates that all of the alleged co-conspirators directed their efforts towards the accomplishment of a single goal or common purpose, then a single conspiracy exists. *Richerson*, 833 F.2d at 1153. The common goal factor requires one

4

objective, or set of objectives, or an overall objective to be achieved by multiple actions. *Id.* The Fifth Circuit in *Richerson* listed a variety of "common purposes" that had been previously identified by the court in various cases, including "mutual enrichment" in a mail fraud conspiracy case. *Id*. Similarly, after recognizing the broadness of the common goal test,[2] the *Richerson* court held that it could not declare incorrect "the Government statement . . . that the common goal driving all members of the single conspiracy . . . was their <u>personal gain</u> through the fraud" of an oil drilling contractor. *Id.* (emphasis added)(finding that the "overall plan was for all members to obtain some reward for their participation in the conspiracy;" the contracting company's employees "realized personal gains by obtaining money and property through kickbacks, and the vendors realized gains by locking in millions of dollars of business through bribes").

Regarding nature of the scheme, where the activities of one aspect of the scheme are necessary or advantageous to the success

---

[2] After presenting the laundry list of common goals, the *Richerson* court observed, "Given these broad 'common goals' the common objective test may have become a mere matter of semantics." *Richerson*, 833 F.3d at 1153 (common goals identified in previous cases include: (1) the passing of a large quantity of counterfeit bills over a period of time; (2) a series of staged automobile collisions involving a varying pattern of participants, in different locations, over an extended time period; (3) a plan, over three years in process, with varying participants, to buy cocaine; and (4) in a mail fraud conspiracy case, "mutual enrichment" or the amassing of money by false representations about the value of Llano ore and its commercial capabilities). *See also Pena-Rodriguez,* 110 F.3d at 1127 n.6 (*quoting Richerson* supra).

of another aspect of the scheme or to the overall success of the venture, where there are several parts inherent in a larger common plan, the existence of a single conspiracy will be inferred. *Richerson*, 833 F.2d at 1154. *See also U.S. v. Wilson*, 116 F.3d 1066, 1075-76 (5th Cir. 1997)(rev'd on other grounds in *U.S. v. Brown*, 161 F.3d 256 (5th Cir. 1998))(stating that Courts look at "the degree of interdependence of the actions of members of the conspiracy-that is, whether the activities of one aspect of the of the scheme are necessary or advantageous to the success of another aspect of the scheme").

The final conspiracy factor of overlapping participants examines "the interrelationships between the participants and various parts of the scheme." *Richerson*, 833 F.2d at 1154. It is not required that every member participate in every transaction to find a single conspiracy, and "where the memberships of two criminal endeavors overlap, a single conspiracy may be found." *Id.* Parties who knowingly participate with core conspirators to achieve a common goal may be members of an overall conspiracy. *Id*. The members of a conspiracy which functions through a division of labor need not have an awareness of the existence of the other members, or be privy to the details of each aspect of the conspiracy. *Id.* (finding that all the Government had to show was that co-conspirators were conspiring with a core conspirator).

A conspiracy may exist even if a conspirator does not agree to

6

commit or facilitate each and every part of the substantive offense, *Salinas v. United States*, 522 U.S. 52, 63 (1997), and "the government need not always demonstrate an actual agreement among the various conspirators, or even actual knowledge of each other to establish a single conspiracy." *United States v. Mitchell,* 777 F.2d 248, 259 (5th Cir. 1986)(*citing United States v. Sutherland*, 656 F.2d 1181, 1190-91 (5th Cir. 1981), *cert. denied*, 455 U.S. 949 (1982)). While the partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, each member is responsible for the acts of each other. *Salinas*, 522 U.S. at 63. If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators. *Id*. at 64. In fact, a person may even be liable for conspiracy even though he was incapable of committing the substantive offense. *Id*.

In some cases the interdependent nature of the criminal enterprise is such that each conspirator had to have realized that the conspiracy extended beyond his individual role. *Sutherland,* 656 F.2d at 1190-91. *Id.* Such conspiracies are often referred to as "chains" because "the success of the criminal scheme depends on the success of each link in the chain." *Id.* at 1191. Individuals associating themselves with a chain conspiracy know that the conspiracy "has a scope and that for its success it requires an

organization wider than may be disclosed by his personal participation." *Id*.

The RICO conspiracy provision, 18 U.S.C. § 1962(d), is more comprehensive than the general conspiracy offense and broadened conspiracy coverage by omitting the requirement of an overt act. *Id*. The RICO conspiracy statute provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b),or (c) of this section." 18 U.S.C. § 1962(d). Subsection (a) involves the unlawful investment into an enterprise of proceeds obtained from a pattern of racketeering; subsection (b) makes it unlawful for a person to acquire or maintain an interest in or control of an enterprise through a pattern of racketeering activity; and subsection (c) makes it unlawful for a person employed by or associated with an enterprise to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity.[3] It is sufficient under RICO that

---

[3]The full text of 18 U.S.C. § 1962 is as follows:
(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of

8

the conspirator adopt the goal of furthering or facilitating the criminal endeavor and may do so in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion. *Id*.

The Fifth Circuit in *Sutherland* presented an in-depth analysis of counting conspiracies that reviewed traditional conspiracy law, including the "wheel" and "chain" conspiracies, and the RICO "enterprise conspiracy." 656 F.2d at 1189-1195. The wheel conspiracy was explained by analysis of the Supreme Court's decision in *United States v. Kotteakos*, 328 U.S. 750 (1946), which alleged a single conspiracy to obtain government loans by making fraudulent representations. During the *Kotteakos* trial, the Government, by its own admission,[4] presented proof of multiple conspiracies with the sole common element being one man who directed each group.

---

the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

[4] Note that in *Sutherland*, the Government also admitted that it introduced no evidence of a single conspiracy. 656 F.2d at 1190.

*Sutherland*, 656 F.2d at 1189. The Supreme Court described the multiple conspiracies pattern as "'separate spokes meeting in a common center' but 'without the rim of the wheel to enclose the spokes.'" *Id.* *Sutherland* involved two conspiracies whose common participant was only Sutherland; the court noted, "'If there is not some interaction between those conspirators who form the spokes of the wheel as to at least one common illegal object, the "wheel" is incomplete, and two conspiracies rather than one are charged.'" *Id*. at 1190 *(quoting United States v. Levine*, 546 F.2d 658, 663 (5th Cir. 1977)). Contrast this to the "chain" conspiracy, in which the interdependent nature of the criminal enterprise is such that each conspirator had to have realized that the conspiracy extended beyond his individual role.

*Sutherland* involved a municipal court judge and two other defendants who allegedly collected traffic tickets along with the amount of the statutory fine plus a small premium and delivered the tickets to Sutherland, who would have the cases transferred to his docket and favorably dispose of them. The money would then be split between Sutherland and whichever defendant delivered the ticket. The Government did not dispute the defendants' claims that the two persons delivering tickets to the judge did not know of one another. 656 F.2d at 1186. In fact, the Government, "by its own admission . . . introduced no evidence of a single conspiracy but . . . rested its case on two distinct multiple conspiracies." *Id*. at 1190.

The Government defended the joint trial not on the basis of traditional multiple conspiracy law but argued that the defendants were properly tried together for a single "enterprise conspiracy" under RICO, contending that "a single conspiracy to violate a substantive RICO provision may be comprised of a pattern of agreements that absent RICO would constitute multiple conspiracies," regardless of whether there was any agreement between members of the two separate conspiracies.[5]  *Id.* at 1191.

The Fifth Circuit rejected the Government's argument, finding that RICO's expansion did not do away with a finding of agreement but that it "provide[d] a new criminal objective by defining a new substantive crime." *Id*. at 1192. The court explained that what tied together a series of agreements that pre-RICO would be considered multiple conspiracies "is not the mere fact that they involve the same enterprise, but is instead as in any other conspiracy an 'agreement on an overall objective.'" *Id.* at 1192-93. The court further commented, "Taken to its logical extreme, a rule allowing the joint trial of otherwise unrelated conspiracies solely

---

[5]The Government's argument continued:

[T]hese otherwise multiple conspiracies are tied together by the RICO "enterprise:" so long as the object of each conspiracy is participation in the same enterprise in violation of RICO, it matters not that the different conspiracies are otherwise unrelated. Thus, the government argue[d] that it need not demonstrate any connection between [the defendants delivering the tickets] because the two conspiracies at issue each involved the same RICO enterprise the Municipal Court of the City of El Paso.

*Id.*

11

on the basis of their relationship to a common enterprise the rule which the government advocates in this case leads to ridiculous results." *Id.* at 1194. The Fifth Circuit summed up the rule of RICO and multiple conspiracies as follows:

> (1) a pattern of agreements that absent RICO would constitute multiple conspiracies may be joined under a single RICO conspiracy count if the defendants have agreed to commit a substantive RICO offense; and (2) such an agreement to violate RICO may, as in the case of a traditional "chain" or "wheel" conspiracy, be established on circumstantial evidence, i.e., evidence that the nature of the conspiracy is such that each defendant must necessarily have known that others were also conspiring to violate RICO.

*Id.* at 1194.[6]

Finally, a finding that the evidence shows one or multiple

---

[6]The Fifth Circuit's analysis of this issue centered largely on clarifying an earlier ruling, *United States v. Elliott*, 571 F.2d 880 (5th Cir.1978), cert. denied, 439 U.S. 953 (1978), which the Government relied upon for its contention that no agreement between members of the separate conspiracies was necessary under RICO. The court found in Elliott that a series of agreements that pre-RICO would have constituted multiple conspiracies could be tried as a single RICO "enterprise" conspiracy. *Id.* at 1192. The court noted however that this finding rested in large part upon proof of a traditional chain conspiracy in which each defendant must necessarily have known that others were also conspiring to participate. *Id.* at 1193. The court provided the following analysis:

> To be sure, the government did not prove in *Elliott* that each of the conspirators had explicitly agreed with all of the others to violate the substantive RICO provision at issue. However, the government did prove that, as in a traditional "chain" conspiracy, the nature of the scheme was such that each defendant must necessarily have known that others were also conspiring to participate in the same enterprise through a pattern of racketeering activity. We found the facts sufficient to demonstrate that the defendants knew they were "directly involved in an enterprise whose purpose was to profit from crime," and that each knew "that the enterprise was bigger than his role in it, and that others unknown to him were participating in its affairs." The agreement among all of the defendants in *Elliott* was an implicit one, but it was an agreement nonetheless.

*Id*. (citations omitted).

12

conspiracies is a question of fact for the jury.  *United States v. Morgan*, 117 F.3d 849, 858 (5th Cir. 1997).  A defendant can raise the claim of multiple conspiracies as a defense and request the appropriate jury instruction.  *United States v. Stowell*, 947 F.2d 1251, 1258 (5th Cir. 1991), cert. denied, 112 S.Ct. 1269 (1992). "If the government sufficiently supports its charge of a single conspiracy, evidence at trial of multiple conspiracies does not of itself create a material variance with the indictment; at most, such evidence creates a fact question and entitles the defendants to a jury instruction on the possibility of multiple conspiracies." *United States v. Barraza*, 853 F.2d 288, 291 (*quoting United States v. Sutherland*, 656 F.2d 1181, 1189 n.5 (5th Cir. 1981), *cert. denied*, 455 U.S. 949 (1982)).[7]

The Third Superceding Indictment appears to satisfy the *Richerson* and *Pena-Rodriguez* requirements of common goal, nature of the scheme, and overlapping participants. The indictment alleges that the Defendants had a common goal of personal enrichment through the misuse of their non-profits and political offices through fraud in, theft from, and graft involving the receipt of grant funds and property from the State of Louisiana, the United States of America, the City of New Orleans, and private donors.  Each of the defendants

---

[7] The Fifth Circuit in *United States v. Barraza* found that in a 17 week trial with 159 witness and 21 defendants and six days of jury deliberation, that the multiple conspiracy issue was resolved when the jury delivered its verdict, which acquitted seven defendants on all counts and found six defendants not guilty as to the conspiracy to commit racketeering count.

allegedly directed his and her efforts towards the common goal of personal gain through the use of the non-profit entities and political office, which exemplifies a single conspiracy.

The common objective of personal enrichment tends to show the commonality of purpose for the existence of the non-profits themselves, and the singular nature of the conspiracy. The common goal alleged is "personal financial and political gain," which is analogous to the goals of "personal gain" and "mutual enrichment" previously upheld by the Fifth Circuit. *See Richerson*, 833 F.2d at 1153.

In *United States v. Wilson,* 116 F.3d 1066, 1075 (5 Cir. 1997) the court examined the "degree of interdependence of the actions...that is, whether the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect of the scheme." The Fifth Circuit has also found that there is no requirement that every member must participate in ever transaction to find a single conspiracy. *United States v. Perez*, 389 F.2d at 62. The Government alleges that the evidence suggests an interdependence of action that indicates an order of involvement in the common goal of personal enrichment through the use of grant funds and property obtained through the various non-profits.

The alleged composition of the enterprise-in-fact and the various actions of its participants appear to satisfy the overlapping participants requirement. As the Grand Jury Found in

the Third Superseding Indictment, while there were many people involved in the alleged conspiratorial scheme, the four mail participants were allegedly Renee Gill Pratt, Mose Jefferson, Betty Jefferson, and Angela Coleman. To varying degrees others allegedly benefitted, but the charged Defendants allegedly constitute the architects, planners and executors of the scheme. The Third Superseding Indictment alleges one RICO conspiracy in Count 1. The question of multiple conspiracies is a fact question for the jury, and Defendants can request an appropriate jury charge. As noted in *Sharpe*, any possible prejudice can be prevented by limiting jury instructions, careful and deliberate evidentiary rulings, and the requirement of a unanimous verdict. *United States v. Sharpe*, 193 F.3d 852, 870 (5th Cir. 1999).

New Orleans, Louisiana, this 25th day of August, 2010.

_____
UNITED STATES DISTRICT JUDGE